IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

BYRON WILLIAMS,

    Plaintiff,

v.                                                                  No. 06-2777

MARK LUTTRELL, in his capacity
as Sheriff of Shelby County; SHELBY
COUNTY SHERIFF'S OFFICE; and
SHELBY COUNTY GOVERNMENT,

    Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SHELBY
COUNTY'S PARTIAL MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR
PARTIAL SUMMARY JUDGMENT
_____

The Plaintiff, Byron Williams, brought this action seeking declaratory injunctive relief and damages against the Defendants, Mark Luttrell, Shelby County Sheriff's Office ("Sheriff's Office") and Shelby County Government ("Shelby County"), alleging violations of the First and Fourteenth Amendments to the United States Constitution and the Family Medical Leave Act ("FMLA").[1]  Before the Court is Defendant Shelby County's partial motion to dismiss, or in the alternative, motion for partial summary judgment.  (Doc. No. 20.)  The Plaintiff has responded, and this motion is now ripe for disposition.  For the reasons set forth below, Shelby County's motion is GRANTED IN PART and DENIED IN PART.  Specifically, the Court GRANTS the

---

[1] On August 1, 2007, the Court granted the motion to dismiss of Defendants Mark Luttrell and the Sheriff's Office.  (Doc. No. 32.)  Thus, Shelby County is the only remaining defendant in this case.

Defendant's motion to dismiss the Plaintiff's Fourteenth Amendment substantive due process claim, but DENIES its motion to dismiss the Plaintiff's other claims.

## BACKGROUND

The Plaintiff has alleged the following in his Amended Complaint. He was a deputy jailer employed by the Sheriff's Department until December 11, 2005, when he was constructively discharged. (Am. Compl., Doc. No. 22, ¶ 2.) Williams was also the former president of the American Federation of State, County and Municipal Employees, Local 1733 ("Local 1733"). (Id. ¶ 5.) The Plaintiff, who had filed two previous civil rights lawsuits against the county stemming from his work as president of Local 1733, claims he was constructively discharged in retaliation for his union activity, his use of family medical leave, and his filing of the two prior lawsuits against his employer. (Id. ¶¶ 6-27.)

## STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

A Rule 12(b)(6) motion shall be converted into a motion for summary judgment when materials outside the pleading are presented to and accepted by the court. See Fed. R. Civ. P. 12(b) ("If, *on a motion asserting the defense numbered (6)* to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56 . . . .") (emphasis added). The Defendant has incorporated by reference materials outside of the pleadings that were attached to its first partial motion to dismiss, or alternatively, for partial summary judgment. (Doc. No. 20-2 at 3.) In addition, the Plaintiff has attached his own affidavit to his Response to the motion. (Aff. of Byron Williams, Doc. No. 29.) Because the Court will consider these materials, it shall treat Shelby County's motion as one under Federal Rule of Civil Procedure 56.

    Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

(1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

The Defendant contends that the Amended Complaint must be dismissed because 1) the Plaintiff's speech was not protected by the First Amendment; 2) the Plaintiff has failed to establish that he was constructively discharged; 3) the Defendant did not violate the Plaintiff's procedural due process rights; and 4) the Plaintiff's substantive due process claim is duplicative of his First Amendment retaliation claim.  The Court shall address each of these arguments in turn.

A.   WHETHER THE PLAINTIFF'S SPEECH WAS PROTECTED BY THE FIRST AMENDMENT

The Defendant presents two arguments for why the Plaintiff's speech was not protected by the First Amendment.  First, Shelby County cites Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463 (1979) (per curiam) for the proposition that governments are not required to recognize public employee unions.  Thus, it claims that it had no reason to retaliate against the Plaintiff based on his union activities.  (Doc. No. 20-2 at 3-4.)  In Smith, the plaintiffs, public employees and their union, claimed that their First Amendment rights were violated where their employer, the Arkansas State Highway Department, required that all grievances be submitted *directly* to it, rather than through the union.  441 U.S. at 463-464.  The United States Supreme Court held that while public employees had a right to "associate and

speak freely and petition openly," and were protected by the First Amendment from retaliation for doing so, the First Amendment did not "impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it." Id. at 465 (citation omitted).  Accordingly, while the employer's practice of refusing to deal with the union might have constituted an unfair labor practice if it were subject to the same labor laws applicable to private employers, its refusal did not violate the public employees' First Amendment rights. Id. at 465-66; see also Brown v. Alexander, 718 F.2d 1417 (6th Cir. 1983) ("The state . . . may deal with . . . public employee organizations and regulate speech and advocacy rights of its employees in a fashion different from private employers.") (citation omitted).

     The Supreme Court's holding in Smith is inapposite to this case, however, because the Plaintiff specifically alleges that his employer retaliated against him for his activities in Local 1733.  Although the Court found that public employers can ignore the unions that represent their employees, it also clearly held that public employees have a First Amendment right to be members of unions and to advocate on behalf of union interests, *without* retaliation. Smith, 441 U.S. at 465; see also Brown, 718 F.2d at 1429 ("We conclude that so long as public employees have a right to associate together in organizations or associations for their common interest, so long as they can petition and advocate their positions individually and collectively, and so long as they can operate in these ways and seek these aims without retaliation, discrimination, suppression, or censorship, their labor relation rights have not been constitutionally infringed.") (citation omitted).  Nowhere did the Court state that a public employer's freedom to ignore unions implied that public employers were unlikely to retaliate against employees who were union members.  In fact, the Court indicated that the outcome of the case would have been different, had there been any allegations of retaliation or discrimination. Smith, 441 U.S. at 465.

5

Accordingly, this Court finds that Shelby County's argument that it could not have retaliated against the Plaintiff for an activity it was free to disregard fails as a matter of law.

Second, the Defendant argues that the Plaintiff's speech was not protected by the First Amendment because it did not touch upon a matter of public concern.  The Supreme Court has held that statements by public employees on matters of public concern are protected by the First Amendment, unless the state can prove that the needs of the government in promoting the efficiency of public services outweigh the speech rights of the employee.  Rankin v. McPherson, 483 U.S. 378, 384-88 (1987).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Connick v. Myers, 461 U.S. 138, 147-48 (1983).  Examples of speech that involve a matter of public concern include a letter written by a teacher to a local newspaper that was critical of the way school officials had raised money for schools, Pickering v. Board of Education, 391 U.S. 563 (1968), and a statement directed at a co-worker that expressed hope that a second assassination attempt on President Reagan would be successful, Rankin v. McPherson, 483 U.S. 378 (1987).  As to union activities, the Sixth Circuit has held that there is "no doubt that an employee who is disciplined solely in retaliation for his membership in and support of a union states a valid first amendment claim under Connick and Pickering."  Boals v. Gray, 775 F.2d 686, 693 (6th Cir. 1985).  However, merely because a public employee's speech is union-related, does not mean that it touches upon a matter of public concern.  Id.

The Supreme Court recently elaborated on its definition of what constitutes speech that is a matter of public concern, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti

6

v. Ceballos, __ U.S. __,126 S.Ct. 1951, 1960 (2006).  In Garcetti, a deputy district attorney, Richard Ceballos, was informed by a defense attorney that an affidavit used to obtain a search warrant contained inaccuracies.  Id. at 1955.  After examining the affidavit and speaking with the affiant, Ceballos prepared a memorandum for his supervisors recommending that the case be dismissed.  Id. at 1955-56.  Despite Ceballos's concerns, the prosecution of the case continued and the judge rejected the challenge to the warrant.  Id. at 1956.  Ceballos later filed suit after allegedly being subjected to retaliation.  Id.

The Court reasoned that Ceballos had not engaged in protected speech because he "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case."  Id. at 1960.  Furthermore, the Court noted that it was nondispositive that Ceballos had expressed his views in his office, rather than in public, and that his memo concerned the subject matter of his employment.  Id. at 1959.  Rather, what made this case different from Pickering and Rankin was that

> Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do. It is immaterial whether he experienced some personal gratification from writing the memo; his First Amendment rights do not depend on his job satisfaction. The significant point is that the memo was written pursuant to Ceballos' official duties . . . . Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case. When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance.

Id. at 1960.  Thus, the relevant inquiry for this Court is whether the Plaintiff was acting pursuant to his official duties when he engaged in the speech at issue in this case or whether he was acting as a private citizen.

The Defendant contends that the Plaintiff's activities as president of Local 1733, which primarily consisted of representing union members during grievance procedures, were matters of personal, rather than public, concern.  (Doc. No. 20-2 at 4-5.)   In addition to his union activities, Williams alleges that the protected speech he engaged in also included complaints about

> constitutional violations of other jailers, inadequate ventilation for inmates and jailers, urine and feces in the drainage systems and on the floors of the jail, brown recluse spiders in the jail, inadequate paging and emergency response system, inadequate or faulty equipment, among other things.

(Aff. of Byron Williams, Doc. No. 29, ¶ 6.) According to the Plaintiff, he "spoke on numerous occasions to Sheriff Department officials regarding these issues . . . [as well as] the media and the county commission." (Id. ¶ 7.)

Applying Connick and Garcetti, the Court finds that the Plaintiff has raised an issue of material fact as to whether his speech was of public concern. Contrary to the Defendant's assertion, representing union members during grievance procedures was not purely a matter of personal interest to Williams. The primary focus of such representation would not be to address any personal disputes he might have with his employer about the terms of his own employment, but rather to ensure that the interests of other employees are properly represented. See e.g., Nair v. Oakland County Cmty. Mental Health Auth., 443 F.3d 469, 478 (6th Cir. 2006) (holding that a public employee who was speaking about "his own job responsibilities and hours" was not addressing a matter of public concern); Farhart v. Jopke, 370 F.3d 580, 592 (6th Cir. 2004) (holding that employee's speech was not of public concern when its focus "was his own personal 'beef' with the union and school district concerning his deteriorating job situation"); Orick v. Banziger, 945 F. Supp. 1084, 1090 (S.D. Ohio 1996) (holding that employee's threat to resort to union representation in order to receive back pay related to a term of her employment that was of personal, rather than public, concern). Similarly, the purpose of any speech activities the Plaintiff engaged in concerning the conditions of the prison would have been to shed light on the effects of these conditions on prisoners and jailers alike, not merely on the effects they had on Williams. Furthermore, it appears that none of the activities the Plaintiff allegedly engaged in as president of Local 1733, nor his activities as a "whistle-blower," were part of his official duties

as a deputy jailer. Therefore, his speech could be construed as a matter of public concern, which would be protected by the First Amendment.

B.  WHETHER THE PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM FOR CONSTRUCTIVE DISCHARGE

Shelby County next argues that the Plaintiff has failed to meet his burden of proof for constructive discharge. The elements of a constructive discharge claim are "that 1) 'the employer . . . deliberately create[d] intolerable working conditions, as perceived by a reasonable person,' and 2) the employer did so 'with the intention of forcing the employee to quit . . . .'" Logan v. Denny's, Inc., 259 F.3d 558, 568-69 (6th Cir. 2001); see also Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998) (holding that to prove constructive discharge, a government employee alleging retaliation for the exercise of First Amendment rights must show that a reasonable person in his or her shoes would have felt compelled to resign). In determining whether a reasonable person would have felt compelled to resign, courts in the Sixth Circuit consider the following factors:

> 1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Logan, 259 F.3d at 569. However, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Carter v. Bell, 33 F.3d 450, 459 (4th Cir. 1994).

In this case, Williams has submitted an affidavit stating that his former employer falsely filed over fifteen charges of misconduct, insubordination, tardiness, and absence against him in the period between 2000-2005. (Aff. of Byron Williams, Doc. No. 29, ¶ 8.) The Plaintiff contends that most of these charges were ultimately dismissed, but that the cumulative effect of

9

their filing constituted "badgering, harassment and humiliation by the defendants calculated to encourage the Plaintiff's resignation."  (Id. ¶¶ 9, 11.)  According to Williams, the "pattern of conduct culminate[d] in a final charge of absence without leave alleging that [he] was not at work when he was at work and/or while he was on family medical leave."  (Am. Compl., Doc. No. 22, ¶ 14.)  It is undisputed that the Plaintiff was charged with being absent without leave ("AWOL") for a period of time in August 2005, and that he was suspended for thirty days without pay as a result.  (Doc. No. 2-2 ¶ 8; Aff. of Byron Williams, Doc. No. 29, ¶15.)  Shelby County submits that Williams had exhausted his family medical leave, while the Plaintiff asserts that he had not.[2]  Within a week of returning to work, Williams received notice of another disciplinary action stemming from an earlier incident of alleged insubordination.  (Doc. No. 2-2 ¶ 12.)  The Plaintiff subsequently resigned.  (Id. ¶ 13.)

The Court finds that the Defendant has failed to meet its burden of showing the absence of a genuine issue of material fact on this claim.  First, the Defendant presents no evidence that disputes Williams's assertion in his affidavit that it falsely filed over fifteen disciplinary charges against him between 2000-2005.  This unrebutted evidence supports the Plaintiff's claim that he was badgered, harassed, or humiliated by the Defendant in way that was calculated to encourage his resignation.  In addition, while Shelby County recounts the events surrounding the filing of the AWOL and insubordination charges, it does not provide the Court with sufficient information to determine that there are no genuine issues of material fact as to whether those charges were justified.  The Defendant merely asserts in a conclusory fashion that because the

---

[2] The Shelby County Civil Service Merit Board ("CSMB") upheld the disciplinary charge of AWOL.  Williams filed a petition to review the CSMB's decision to state court in May 2006.  That matter is still pending.  (Doc. No. 2-2 ¶ 14.)

Plaintiff resigned voluntarily, the Defendant cannot have intended him to quit. (Doc. No. 20-2 at 7-8.) Because the Plaintiff has presented enough evidence to create a material issue of fact as to whether an objectively reasonable person in his position might have felt forced to resign, Shelby County's motion for summary judgment on this issue must be denied.

C. WHETHER THE PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS WERE VIOLATED

Williams contends that he was constructively discharged without adequate procedural due process. The Defendant counters that because the Plaintiff voluntarily resigned, he waived his rights to procedural due process. The Sixth Circuit has held that

> [i]n analyzing a procedural due process claim, a court must first determine whether the plaintiff has adequately alleged a deprivation of a constitutionally protected interest. Second, a court must determine what process plaintiff is due, and whether plaintiff is required to meet the burden of pleading and proving the inadequacy of state remedies.

Walters v. City of Norton, 181 F.3d 106, at *3 (6th Cir. May 28, 1999) (citing Metik v. Blalock, 983 F.2d 1353, 1359-67 (6th Cir. 1993)). As to the first prong, Shelby County concedes that, as a civil service employee who could not be terminated except for good cause, Williams had a constitutionally protected property interest in his employment. (Doc. No. 20-2 at 9.) The Defendant could not deprive Williams of his property right in continued employment without due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)

With regard to the second prong, it is undisputed that as a public employee, the Plaintiff was entitled to a pretermination hearing before the he could be subjected to adverse administrative action. See id. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.") (citation omitted). Where a public employee's resignation is so

involuntary that it amounts to a constructive discharge, he or she has been deprived of a property interest without such due process.  See Nunn v. Lynch, No. 03-6180, 2004 WL 2030289, at *3-4 (6th Cir. Sept. 8, 2004) ("In the absence of a constructive discharge, [appellee] has failed to show the deprivation of a property right in violation of the Due Process Clause."); Parker v. Bd. of Regents of Tulsa Jr. Coll., 981 F.2d 1159, 1162 (10th Cir. 1992) ("If, however, her resignation was so involuntary it amounted to a constructive discharge, defendants did deprive her of her property interest without due process.") (citation omitted); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 173 (4th Cir. 1988) ("If, on the other hand, [appellant's] 'resignation' was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause.").

The Defendant argues that Williams resigned voluntarily and therefore was not entitled to a pretermination hearing.  (Doc. No. 20-2 at 10.)  However, because the Court has held that the Plaintiff has alleged sufficient facts to support his contention that it was objectively reasonable for him to feel forced to resign, it must deny Shelby County's motion for summary judgment on the basis that Williams was not entitled to procedural due process.

D.      WHETHER THE PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS WERE VIOLATED

Last, Shelby County argues that the Plaintiff's substantive due process claim should be dismissed because it is duplicative of his First Amendment retaliation claim.  (Doc. No. 20-2 at 11.)  Williams's Amended Complaint alleges violations of the First and Fourteenth Amendments.[3]  (Am. Compl., Doc. No. 22, ¶ 27.)

---

[3] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. Const. amend. I.  The Fourteenth Amendment provides, in relevant part: "[N]or shall any state deprive any person of life, liberty, or property, without due process of

In Brandenburg v. Housing Authority of Irvine, 253 F.3d 891, 900 (6th Cir. 2001), the Sixth Circuit affirmed the dismissal of the appellant's substantive due process claim on the basis that it was "duplicative of her First Amendment retaliation claim, and she has not pointed to any other fundamental rights that have been violated . . . ."  Like Williams, the appellant in Brandenburg sued her former employer for violating her First and Fourteenth Amendment rights, claiming that the employer retaliated against her after she publicly criticized it and that it effectively forced her to resign.  Id. at 894-900.  In dismissing her Fourteenth Amendment substantive due process claim, the court noted that "a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable."  Id. at 900 (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)).

In this case, it appears that the Plaintiff's Fourteenth Amendment substantive due process claim is based on his allegation that the Defendant retaliated against him for exercising his First Amendment rights.  As such, it is duplicative of his First Amendment claim and must therefore be dismissed.

## CONCLUSION

Based on the foregoing, the Defendant's partial motion to dismiss, or in the alternative, motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.  Specifically, the Court GRANTS Shelby County's motion to dismiss the Plaintiff's Fourteenth Amendment substantive due process claim, but DENIES its motion as to the Plaintiff's other claims.

**IT IS SO ORDERED** this 1st day of November, 2007.

                 s/  J. DANIEL BREEN
                 UNITED STATES DISTRICT JUDGE

---

law . . . ."  U.S. Const. amend. XIV, § 2.